UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 07-cr-50102 |
| VERSUS | JUDGE HICKS |
| AUSTIN JAROD SANDERS | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Before the court is Defendant's Motion to Suppress (Doc. 18). Defendant argues that a search of his cell phone and the subsequent search of his home by his probation officer were improper and that all evidence obtained during those searches should be suppressed. For the reasons that follow, it is recommended that Defendant's motion to suppress be denied.

**Facts**

The evidence at the March 18, 2008 evidentiary hearing established the following facts. Defendant is a convicted felon, having pled guilty in Louisiana state court to unauthorized entry of an inhabited dwelling and illegal caring of a weapon. Defendant was given a suspended sentence and placed on supervised probation for two years. His parole officer is Sherlon Cone, a 14-year veteran officer with the Louisiana Department of Probation and Parole. Defendant's probation began on July 24, 2006.

In Defendant's initial meeting with Officer Cone on July 31, 2006, Defendant reviewed and signed his conditions of probation.  Government Exhibit 1.  Those conditions required Defendant to, among other things: make a full and truthful report at the end of each month; report to the probation officer as directed; refrain from possessing firearms or other dangerous weapons; and refrain from frequenting unlawful or disreputable places or consorting with disreputable persons.  Defendant was advised that his failure to comply with his conditions could cause his probation to be revoked.  Defendant was further advised that he was subject to arrest at any time, with or without a warrant, for the purpose of returning him to court for further disposition.  Government Exhibit 1, page 2.

Before Defendant was placed on probation, the Shreveport Division of Probation and Parole adopted an office policy which prohibited or banned cell phones in its building.  The policy defined cell phones as "contraband" and ordered their confiscation.  Defendant Exhibit 2.  The inter-office memorandum containing the policy is dated April 19, 2005 and states as follows:

> "Effective this date, the policy of the Shreveport District Office Of Probation and Parole is as follows:
>
> All Cellular Telephones are banned from the Shreveport District Office. Individuals entering these premises are subject to search of their person and property.  Contraband including, but not limited to, illegal narcotics, weapons, and cellular telephones will be confiscated.
>
> Notice of this policy shall be posted conspicuously and prominently throughout the Shreveport District Office."

Officer Cone testified that she reviews the cell phone policy with all probationers at the time that she reviews their other conditions of probation with them.

Several signs are posted throughout the Shreveport Office to remind probationers of the cell phone policy.  Government Exhibits 2-6 are various photographs depicting the signage.  Exhibit 2 shows the glass double doors at the entrance of the probation office. Through those glass doors, two signs are clearly visible.  The first sign contains the following warning:

NO CELL PHONES

CELL PHONES ARE
PROHIBITED
INSIDE THIS
BUILDING AND
ARE SUBJECT TO
CONFISCATION

The phrase "NO CELL PHONES" is in red letters.  Government Exhibit 7.

The second sign that is visible through the double glass entry doors contains the following warning:

WARNING!!!

YOUR ENTRY INTO THIS
GOVERNMENT AGENCY
CONSTITUTES
PERMISSION TO SEARCH
YOUR PERSON OR
POSSESSIONS FOR
WEAPONS OR ILLEGAL
ITEMS.

YOU WILL BE ARRESTED IF
FOUND ON THE PREMISES
WITH A WEAPON.

The phrase "WARNING!!!" and the phrase "YOU WILL BE ARRESTED IF FOUND ON THE PREMISES WITH A WEAPON" are in red letters.  Government Exhibit 3.

The windows where probationers are greeted inside the waiting room are reflected in Government Exhibit 4.  As shown in the photograph, the sign prohibiting cell phones and warning about their confiscation is posted immediately above those windows.  To the left of those windows is another sign that warns: "NO CELL PHONES ALLOWED!!!".  Government Exhibit 5.

After a probationer is greeted and he fills out his monthly report, he waits until his name is called to meet with his probation officer.  When his name is called, the probationer is escorted through a wooden door and metal detector.  The sign on the wooden door warns:

NO CELL PHONES

CELL PHONES ARE
PROHIBITED
INSIDE THIS
BUILDING AND
ARE SUBJECT TO
CONFISCATION

Government Exhibit 6.  The words "NO CELL PHONES" and "CONFISCATION" are in red letters.

These same signs have been posted since the cell phone policy came into effect in April 2005.

Officer Cone testified that the cell phone policy was adopted after the Shreveport office received alerts from headquarters that a cell phone had been turned into a weapon; a probationer had used his cell phone to take pictures of a probation officer's family photographs; and another probationer had used his cell phone to take pictures of the exits to the probation office.  Also, the Shreveport probation office had been burglarized in an attempt to gain access to the weapons vault.  Transcript, pages 72-73.

Defendant was required to report to the probation office and to meet with his probation officer on a monthly basis or as directed by his probation officer.  Defendant did not report as directed in May 2007 and was given another report date of June 4, 2007.  Again, Defendant failed to appear.  However, Defendant reported on June 6, 2007.  After Defendant completed his monthly report, he was greeted by Officer Cone and escorted through the wooden door and metal detector and into Officer Cone's personal office.  Officer Cone intended to require Defendant to submit to a drug screen because Defendant had failed to report for his last two visits and she had received notice of an altercation between Defendant and his employer in which the police were called.  Transcript, page 46.

Prior to the drug screen, Office Cone told Defendant to empty his pockets.  This was done to ensure that Defendant had nothing in his possession that could be used to alter the results of the drug screen.  Defendant emptied his pockets and placed his items, including his cell phone, on Officer Cone's desk.  Officer Cone told Defendant, "The cell phone is mine."  Transcript, pages 25-26.  She told Defendant that he knew not to bring the phone into the

office and that his phone was being confiscated.  Defendant was then taken by Officer

Shaver (a male probation officer) for the drug screen.

While Defendant was submitting to the drug screen, Officer Cone opened

Defendant's cell phone (it was a flip phone) and saw a screen saver picture of a handful of

twenty dollar bills spread out in the shape of a fan with the words "Pines Road"

superimposed on the picture.  Transcript, pages 27-28.  (Color photographs of the screen

saver on Defendant's cell phone are in the record as Doc.  32.)  Officer Cone knew that

Defendant had been affiliated with a gang known as the "Pines Road" gang.  In fact, Officer

Cone had previously searched Defendant's bedroom (when he was placed on probation) and

found numerous photographs that Defendant had taken of himself wearing gang colored

clothing.  Officer Cone had, at that time, advised Defendant that he could not involve himself

in gang activity.

After seeing the gang reference on Defendants cell phone, Officer Cone opened the

saved pictures folder on the phone.  (Officer Cone owned that same model cell phone.

Transcript, page 51.)  She discovered pictures of empty liquor bottles, marijuana, gang

symbols and gang colored clothing.  She also discovered a picture of Defendant pointing a

handgun into the camera.  A copy of that photograph is located in the record at Doc.  31,

page 12 of 12.  Officer Cone recognized Defendant's face in the picture.  She also recognized

the kitchen cabinets in the background of the picture as being located in Defendant's kitchen.

Transcript, page 49.  The pictures were dated between two days and two weeks before the office visit.  Transcript, page 51.

Officer Cone waited for Officer Shaver to complete Defendant's drug screen.  Officer Shaver then notified Officer Cone that Defendant's drug screen had returned positive for marijuana.  Officer Cone showed the cell phone photographs to Officer Shaver.  Officer Cone and Officer Shaver then notified a supervisor that they intended to take Defendant to his residence and perform a violation search.

Defendant told the officers that he did not want to go to his home.  He insisted that he be taken straight to jail.  Transcript, page 38.  Defendant was advised that he had no choice.  Defendant then became agitated, so he was handcuffed for officer safety.

During the search of Defendant's bedroom, the probation officers found a handgun under the mattress; marijuana on the dresser; empty liquor bottles; a handgun holster; and rounds of ammunition. Transcript, page 70.  The handgun in the cell phone photograph and the handgun found in Defendant's bedroom appeared to be one and the same.  Transcript, page 78.

**Searches of Probationers**

A search for purposes of the Fourth Amendment occurs when a reasonable expectation of privacy is infringed.  Segura v. United States, 468 U.S. 796, 820 (1984).  A probationer is subject to diminished expectations of privacy compared to the general population.  United States v. Knights, 534 U.S. 112, 121 (2001).  Thus, the Supreme Court

has held that a state's operation of a probation system presents "special needs" beyond normal law enforcement that may justify departures from the usual warrant and probable cause requirements.  Griffin v. Wisconsin, 483 U.S. 868, 873-874 (1987).  Probation, like incarceration, is a form of criminal sanction imposed by a court.  Id.  Probation is simply one point on a continuum of possible punishments ranging from solitary confinement in a maximum security facility to a few hours of mandatory community service.  Id.

Probationers do not enjoy the absolute liberty to which every citizen is entitled, but only conditional liberty properly dependent upon observance of special probation restrictions.  Id.  Consequently, reasonable restrictions upon liberty and privacy are allowed and are necessary to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large.  Id. at 875.

Louisiana law imposes numerous conditions on probationers.  These include permitting a probation officer to visit the probationer at his home or elsewhere.  La. Code Crim. P. art 895(A)(4).  Reasonable suspicion of criminal activity is not required for such a visit. LeBlanc, 490 F.3d at 368-369.  However, to conduct a non-consensual search of a probationer's home for ordinary law enforcement purposes, it is necessary to show reasonable suspicion that the probationer is engaged in criminal activity.  Knights, 534 U.S. at 121.

In evaluating probation officers' alleged violations of probationers' rights under the Fourth Amendment, the Louisiana Supreme Court has applied a "test of reasonableness" which in each case "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails ... considering the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it and the place in which it is conducted." State v. Malone, 403 So.2d 1234, 1239 (La. 1981); LeBlanc, 490 F.3d at 367.

**Analysis and Conclusion**

The undersigned finds that Officer Cone's opening of Defendant's flip phone (which caused her to see the gang-related screen saver) was reasonable.  The opening of the cell phone occurred in Officer Cone's office within the Probation and Parole Office in Shreveport.  Defendant was required to appear at that office at least monthly and as otherwise directed to complete a report and meet with his probation officer.  Defendant knew that bringing a cell phone into the probation and parole office was prohibited and that a violation of the policy would cause the cell phone to be confiscated.  Numerous signs are posted throughout the office with warnings to that effect, and Officer Cone reviewed that policy, as well as Defendant's conditions of probation, during her initial meeting with him.  Given the probation office's concerns that cell phones could be converted to weapons or that they could be used to take pictures of sensitive areas within the office, the cell phone policy itself is reasonable.  Defendant voluntarily brought the cell phone into an office where he knew cell

phones were prohibited and where he knew metal detectors were in place.  Furthermore, Defendant had missed his last two scheduled report dates, and Officer Cone had received a report that Defendant had been involved in an altercation with his employer which led to the police being called.  Transcript, p. 46.  Under these circumstances, it was reasonable for Office Cone to open Defendant's cell phone.  Not only would opening the cell phone expose the screen saver to her, it would allow her to verify that the phone was not a weapon and had not been used for an improper purpose, such as photographing the inside of the probation office.

The scope of the initial intrusion and the manner in which it was conducted are also reasonable under the circumstances.  Officer Cone simply opened Defendant's flip phone. At that point, she saw the screen saver with the gang-related notation.  In fact, anyone standing or sitting next to Defendant when he placed or received a call would likely be in a position to see that screen saver.  The initial intrusion was minimal.

Defendant's cell phone was being confiscated.  Someone would have to turn the phone off before it was placed in Defendant's file.  To do so, Officer Cone would have to open the flip phone to press the power button.  Her observation of the gang-related screen saver was, therefore, inevitable.

Once Officer Cone saw the gang-related screen saver, she had reasonable suspicion to examine the cell phone further for evidence of criminal activity or violations of Defendant's probation.  Officer Cone had previously warned Defendant that he could not

continue to associate with gangs, and the screen saver on the cell phone was a strong indication that Defendant had not heeded her admonition.  From a prior visit of Defendant's home, Officer Cone also knew that Defendant liked to take photographs of himself.  Therefore, Officer Cone's decision to look at any other photographs that were stored on Defendant's cell phone was reasonable and appropriate under these circumstances.

Likewise, once Officer Cone saw the images on Defendant's cell phone, and once Officer Shaver advised her that Defendant's drug screen was positive for marijuana, Officer Cone had reasonable suspicion to conduct a violation search of Defendant's home.  The cell phone photographs included pictures of Defendant pointing a handgun at the cell phone camera, pictures of marijuana, and pictures of gang signs and symbols.  Those pictures were date stamped anywhere from two days to two weeks prior to the search.  Under these circumstances, Officer Cone acted appropriately in conducting the non-consensual search of Defendant's residence.

Accordingly;

**IT IS RECOMMENDED** that Defendant's Motion to Suppress (Doc. 18) be **denied**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **ten (10) business days** from the date of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 45(b).  A party may respond to

another party's objections within **five (5) business days** from the filing of the objections.
Counsel are directed to furnish a paper courtesy copy of any objections or responses to the
District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions
and recommendation set forth above shall bar that party, except upon grounds of plain error,
from attacking on appeal the unobjected-to proposed factual findings and legal conclusions
accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en
banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this the 13th day of May,
2008.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE